[No. 8207.]

## EL PASO COUNTY V. SHELDEN.

1. CONSTITUTIONAL LAW—*Amendment of the Constitution—Construction.* To effect a change in the fundamental law, the intent, to be gathered from the language employed, must be clear and unmistakable. (503.)

2. —— *Salary of County Officers.* There is no conflict between section 15 of art. XIV of the Constitution, and section 8 of the same article as amended.

The amendment does not impair the effect of the provision of section 15 that "all fees, perquisites, and emoluments," allowed to a county officer, "above the amount" of the salaries allowed by law, where fees are prescribed, shall be paid into the county treasury. (503, 504.)

Any attempt to add to the prescribed salary of a county officer, by allowing him to retain fees in an unknown and unascertainable amount, as by the act of April 22nd, 1909 (Laws of 1909, c. 167, sec. 2838), is obnoxious to the constitutional prohibition and without effect. (503, 504.)

*Error to El Paso District Court.* Hon. J. E. LITTLE, Judge.

Mr. CLARENCE M. HAWKINS, Mr. WILLIS L. STRACHAN, for plaintiff in error.

Mr. P. M. KISTLER, for defendant in error.

Mr. JUSTICE BAILEY delivered the opinion of the court.

Elroy. C. Shelden, as County Clerk and Recorder of El Paso County, during the years 1909, 1910 and 1911, issued a total number of 2,737 hunting and fishing licenses, at one dollar each, and under statutory provisions authorizing it, kept twenty-five cents for each license, or a total of $684.25, in addition to his regular salary. The sum of $223, representing the fees so collected for 1909, he paid into the general fund of the county, under protest; but the sum so collected, amounting to $461.25, for the years 1910 and 1911, he retained.

The case was submitted for decision upon an agreed statement of facts, presenting the sole question as to whether the County Clerk was entitled, over and above his regular, fixed annual salary, to keep that portion, designated by statute, of fees collected for hunting and fishing licenses, or whether the same should be covered into the county treasury. Upon trial findings were made and judgment and decree entered in his favor against the county, for the return of the $223 already paid over to it, and allowing him to retain the fees so collected for the other two years. To review this judgment the Commissioners prosecute this writ of error.

By statute enacted in 1907, amending the law of 1903, it was provided, in substance, that when any hunting or fishing license is issued by the County Clerk, the fee therefor should be one dollar, one-fourth of which should be retained by the Clerk, as compensation for filing the application, issuing the license, keeping a record, and making a report thereof, and all other services connected therewith,

one-fourth to be paid into the general fund of the county, and the remaining one-half to be paid to the Game and Fish Commissioner. By chapter 167 of the Session Laws of 1909, sec. 2838, page 391, approved April 28th, 1909, the game and fish law was amended, but the new enactment contained a provision similar to that of the statute of 1907, reading as follows:

"When a license is issued by a county clerk, the fee shall be the same as if issued by the commissioner, and 25 cents thereof shall be for the personal compensation of such clerk for filing the application, issuing the license, keeping a record thereof, making a report, and all other services connected therewith, and shall be in addition to any other salary or compensation, the remaining 75 cents to be remitted to Fish and Game Commissioner."

The legislature thereby undertook to increase the compensation of the County Clerk and Recorder by allowing him certain fees in addition to his regular salary. The question is whether that could lawfully be done under section 15, article XIV of the Constitution, which is as follows:

"For the purpose of providing for and regulating the compensation of county and precinct officers, the general assembly shall, by law, classify the several counties of the state according to population, and shall grade and fix the compensation of the officers within the respective classes according to the population thereof. Such law shall establish scales of fees to be charged and collected by such of the county and precinct officers as may be designated therein, for services to be performed by them, respectively, and where salaries are provided, the same shall be payable only out of the fees actually collected in all cases where fees are prescribed. All fees, perquisites and emoluments above the amount of such salaries, shall be paid into the county treasury."

Pursuant to this provision the following statute, section 2573, R. S. 1908, was enacted in 1899:

"The county clerks in the several counties of this state shall receive as their only compensation for their services an annual compensation to be paid quarterly out of the fees and emoluments of their respective offices, actually collected and not otherwise, to-wit: In counties of the  *  *  * second class the sum of twenty-seven hundred and fifty (2,750) dollars.  *  *  *"

Section 8 of article XIV of the Constitution, as amended in 1902, reads:

"There shall be elected in each county, at the same time at which members of the general assembly are elected, commencing in the year nineteen hundred and four, one county clerk, who shall be ex officio recorder of deeds, and clerk of the board of county commissioners; one sheriff; one coroner; one treasurer, who shall be collector of taxes; one county superintendent of schools; one county surveyor; one county assessor; and one county attorney, who may be elected, or appointed, as shall be provided by law; and such officers shall be paid such salary or compensation, either from the fees, perquisites and emoluments of their respective offices, or from the general county fund, as may be provided by law. The term of office of all such officials that expire in January, 1904, is hereby extended to the second Tuesday in January, A. D. 1905."

The present controversy is based on the amendment of section 8, adopted in 1902, whereby, after naming the county officers then in existence, including County Clerks, County Attorney was added to the list, to be either elected or appointed as prescribed by law, it is further enacted that "such officers shall be paid such salary or compensation, either from the fees, perquisites and emoluments of their respective offices, or from the general county fund, as may be provided by law."

It is contended that amended section 8 amended section 15, so as to permit the legislature to enact the statute giving

to the Clerk as compensation, over and above his regular salary, already fixed, a portion of the fees collected for hunting and fishing licenses.

There is nothing in section 8 which indicates any purpose or intention whatsoever, on the part of the general assembly, to amend section 15. There is absolutely no conflict or inconsistency between these two constitutional provisions. Section 15 authorizes the legislature to fix compensation precisely as amended section 8 does, and this latter section in this respect in no wise alters or changes section 15. Nothing new is found in section 8 except the provision for a County Attorney, and extending the term of certain officers designated therein. The clear meaning of these two sections taken together, is, that if fees are prescribed and a salary fixed, the salary must be paid out of fees collected, and that all fees, perquisites and emoluments above the amount of such salary must be covered into the county treasury. To work an amendment of an existing constitutional provision the intent to do so, which is to be gathered from the language employed, must be clear and unmistakable. This requirement is not in the slightest degree met by any provision of section 8.

The evident purpose of the statute of 1909, providing for the retention by the County Clerk of twenty-five cents out of each dollar collected for hunting and fishing licenses, under which Shelden claims, is to increase the compensation of a county officer where an annual salary is prescribed payable solely out of fees actually collected, without attempting to amend the salary statute itself, and is therefore against not only the spirit but the express letter of section 15. It is manifest that the purpose of this section is to limit the pay of officers having fixed salaries to definite and certain sums, payable periodically. If a portion of the fees collected for hunting and fishing licenses are to be absorbed by paying them to County Clerks, it can only be done

through an appropriate statute increasing such salaries, or by providing another and different method of compensation, and then affecting only officials elected for a subsequent term of office. But in view of section 15, the legislature could not, where salaries are fixed, payable out of fees actually collected, add thereto in fees of an uncertain and varying amount, at the same time leaving the salary statute itself unmodified and in full force and effect. The prime purpose of this constitutional provision is, where salary is fixed for a county officer, payable out of fees, to have that the sole compensation for his services, and any attempt to add to it, through means of fees in an unknown and unascertainable amount, is plainly obnoxious thereto. It is apparent, therefore, that the provision under consideration, which allows County Clerks to keep a portion of fees collected from hunting and fishing licenses over and above their regular salaries, is invalid.

The judgment is, therefore, reversed and the cause remanded, with directions to enter judgment in favor of the Board of County Commissioners and against Shelden for the sum of $461.25, being the amount retained by him for the years 1910 and 1911, without interest, and further decreeing that the county is entitled to retain the $223 already turned over to it by Shelden.

Decision *en banc.*