No. 15,825.

FLANDERS *v.* KOCHENBERGER, CLERK AND RECORDER ET AL.
(193 P. [2d] 281)

Decided April 19, 1948.

Mr. JOHN W. ELWELL, Mr. MATT J. KIKEL, for plaintiff in error.

Mr. LAURENCE E. LANGDON, Mr. A. T. STEWART, for defendant in error KOCHENBERGER.

*En Banc.*

MR. JUSTICE ALTER delivered the opinion of the court.

MILO J. FLANDERS, plaintiff in error, plaintiff below, instituted a derivative action against Austin G. Kochenberger as clerk and recorder of Pueblo county and the Board of County Commissioners of the county to compel Kochenberger to account to the board for fees, perquisites, commissions and emoluments of his office and for judgment for the amount found to be due; for the removal of Kochenberger from office, and other relief. Upon trial to the court, defendants' motion for summary judgment was granted, and the action dismissed at plaintiff's costs.

In his amended complaint plaintiff alleged that Kochenberger is the duly elected, qualified and acting clerk and recorder of Pueblo county, Colorado, and has served as such officer since January, 1933; that upon demand the Board of County Commissioners has refused to institute any action against defendant Kochenberger; that plaintiff is a taxpayer in Pueblo county; that his property has been assessed and that he has paid taxes thereon; that by reason of the acts of defendant Kochenberger of which complaint is made, plaintiff's taxes have been, and will be, increased; that "he brings this action on behalf of himself and all others who are similarly situated and interested, for the use and benefit of Pueblo county and the taxpayers thereof."

He further alleges:

"The defendant, Austin G. Kochenberger, as Clerk and Recorder of Pueblo County, has collected for the use and benefit of Pueblo County, fees, perquisites, commissions and emoluments of his office of county clerk pertaining to the issuance of certificates of title to motor vehicles,

motor vehicle operators' licenses, chauffeurs' licenses and for the collection of specific ownership taxes on motor vehicles during all of his tenure of office. Said fees, commissions, perquisites and emoluments amounting in the aggregate to two hundred sixty-five thousand eight hundred sixty-one dollars and sixty cents ($265,861.60). During all of his term of office the salary of said defendant, Austin G. Kochenberger, as Clerk and Recorder of Pueblo County, has been paid by the defendant, The Board of County Commissioners of the County of Pueblo, and the fees, perquisites, commissions and emoluments aforementioned are over and above the amount of the salary of said defendant, Austin G. Kochenberger, as Clerk and Recorder of Pueblo County.

"During all of his tenure of office, said defendant, Austin G. Kochenberger, as Clerk and Recorder of Pueblo County, has failed to make a monthly sworn statement and to pay over to the county treasurer of Pueblo County all fees, perquisites, commissions and emoluments of his office as provided by law (Vol. 2 C.S.A. '35, Chap. 45, sec. 180) and has failed and neglected to make a written report of said fees, perquisites, commissions and emoluments to the chairman of the board of county commissioners of Pueblo County as provided by law (Vol. 3 C.S.A. '35 Chap. 66, Sec. 39) and has failed and neglected to pay said fees, perquisites, commissions and emoluments to the County treasurer as provided by law. (Vol. 3 C.S.A. '35 Chap. 66, Sec. 43 [38] and Vol. 2 C.S. A. '35 Chap. 16, Secs. 93 and 94 as amended Laws of '37 and Laws of '41) Said defendant, Austin G. Kochenberger, as Clerk and Recorder of Pueblo County has unlawfully and illegally appropriated said fees, perquisites, commissions and emoluments or a portion thereof to his own use."

Defendant Kochenberger filed his answer in which he admitted his official capacity and denied each and every other allegation in said complaint contained. Further answering, he alleged the collection of the fees enum-

erated in the quoted portion of the complaint herein, but denied that funds resulting from said collections were "perquisites, commissions or emoluments of the defendant as clerk and recorder, or as an individual." He further alleged that the sums collected for the services alleged in the complaint had "been accounted for and distributed as provided by law."

Subsequently, and on the day before the trial, defendant tendered an amended answer in which, as a first defense, he alleged that the "amended complaint fails to state a claim against defendant upon which relief can be granted;" a second defense being a general denial; and in a third defense he pleaded the six-year statute of limitations.

Plaintiff moved to strike the plea of the statute of limitations, which motion was denied. The motion of the Board of County Commissioners to dismiss the action as to said board was granted, and plaintiff does not specify error on this ruling.

Subsequently defendant Kochenberger moved for summary judgment upon the ground that there was no "real issue tendered by the amended complaint of plaintiff." The pertinent part of said motion is as follows:

"That there is no real issue tendered by the amended complaint of the plaintiff for the reason that the said complaint alleges that the said defendant has failed to make a monthly sworn statement and pay over to the County Treasurer fees, perquisites, commissions and emoluments of his office collected for the use and benefit of Pueblo County pertaining to the issuance of certificates of title to motor vehicles, motor vehicle operators' licenses, chauffeurs' licenses, and for the collection of specific ownership taxes on motor vehicles, and that by reason of such failure, he has appropriated said fees, perquisites, commissions and emoluments, or a portion thereof, to his own use.

"That in truth and fact, under the provisions of the statute providing for the collection of fees for said pur-

poses, the sums so collected are not fees, perquisites, commissions or emoluments of the defendant, as county clerk and recorder, or individually, but the express provisions of such statutes are for the purpose of paying the expenses of clerk hire and other expenses of the administration of the motor vehicle Department of said county clerk's office.

"Further, said defendant represents and shows to the court that the attorney for plaintiff has openly stated that he cannot prove, and does not expect to prove, that either the County of Pueblo, or the State of Colorado, has lost any money whatsoever on account of the matters and things in said complaint alleged.

"That the plaintiff herein claims and purports to have brought this action and to be prosecuting the same as a taxpayer, whereas, by reason of the facts aforesaid and the admissions of the attorney for plaintiff, said plaintiff is not qualified to maintain this action in that it is impossible for him to establish any injury as a taxpayer.

"Said defendant offers in support of this motion his affidavit to the effect that all moneys collected by him on account of the matters and things aforesaid have been accounted for, paid over, expended and distributed in accordance with the provisions of the statutes in such case made and provided, and that any balance over and above the amounts expended for clerk hire and other expenses of administration of the provisions of the applicable statutes by him, as agent of the Motor Vehicle Department of the State, or the Secretary of State, and the portion of said excess deposited with the County Treasurer is in his custody and control and are ready to be paid over to the County Treasurer if this court shall decide that the proper construction of said statutes requires such payment, and said defendant offers to prove by competent witnesses the statement attributed herein to the attorney for plaintiff."

This motion for summary judgment was granted by the court, and the cause dismissed.

There are two specifications of points: First, "The court erred in overruling plaintiff's motion to strike the plea of the statute of limitations;" and, second, "The court erred in sustaining defendant's motion for summary judgment." These will be discussed in this order.

■ In *Owers v. Olathe Silver Mining Co.*, 6 Colo. App. 1, 39 Pac. 980, and in *Curtis v. City of Pueblo,* 11 Colo. App. 446, 54 Pac. 649, our Court of Appeals held that the statute of limitations might not be pleaded by an amendment to the answer after the issues have been made up. The rule announced in these decisions has been modified by Rule 15 (a), R.C.P. Colo., and by our holdings in *Walters v. Webster,* 52 Colo. 549, 123 Pac. 952; *Maryland Casualty Co. v. City and County of Denver,* 90 Colo. 20, 6 P. (2d) 6, and many other decisions announced by us.

In *Maryland Casualty Co. v. City and County of Denver, supra,* after issue joined, an amended answer setting forth as a special defense the statute of limitations was tendered, and, by order of court, permitted to be filed. Plaintiff moved to strike the amended answer, which was denied. Passing upon this point we said: "After issues joined and a cause has been set for trial, a court may in the exercise of reasonable discretion and in the interest of justice permit the filing of an amended answer pleading additional defenses [citing authorities]."

There was no error committed, under the circumstances appearing in the present case, in permitting the filing of the amended answer pleading the statute of limitations, and denying the motion to strike the same.

■ Under the provisions of subsections (b) and (c), section 133, chapter 16, '35 C.S.A., certain fees are allowed the county clerk and recorder for the services therein authorized to be rendered and performed by him, and under the provisions of section 93 of the same chapter, as amended by S. L. 1937, p. 334, and S. L. Colo. 1939, p. 231, and section 94 of chapter 16, '35 C.S.A., as

amended by S. L. Colo. 1939, p. 232, the county clerk and recorder is designated as the authorized agent of the department (Motor Vehicle Department) for the administration of the provisions of the article relating to the registration of motor vehicles in his county, and by these sections he is authorized to collect and retain certain fees for the purpose of defraying his expenses in connection with the duties imposed upon him by these sections. In 1937, when section 93, supra, was first amended, section 3, chapter 94, p. 334, S. L. '37, was enacted, and its provisions pertain entirely to the fees allowed the county clerk and recorder for services rendered and performed in the discharge of his duties as statutory agent. Under the provisions of section 3, the county clerk and recorder is authorized to retain certain fees, and with reference to the disposition of these fees it is provided that the county clerk and recorder "shall deposit in the general fund * * * of said county, all such sums so retained hereunder; and the necessary costs of said collection and administration shall be paid by regular warrant of said * *. * county, upon voucher duly submitted and approved."

As we understand plaintiff's contention, it is that the moneys here involved were collected by the county clerk and recorder by virtue of the authority vested in him by subsections (b) and (c); section 133, and by sections 93 and 94, amended as hereinabove noted.

In the complaint it is alleged, and in the answer denied, that a portion of the moneys collected was converted by defendant Kochenberger to his own use.

So far as the statutes here involved affect the matter in controversy, the authority to make registrations, give examinations, collect specific ownership taxes, and receive the statutory fees provided therefor, is conferred upon the county clerk and recorder, not in his individual capacity, but by virtue of his office. The authority follows the office, and is by no means a personal right or privilege of the incumbent who at the time is empow-

ered to perform the services and receive the prescribed fees by reason of his incumbency of the office.

It is said by defendant that the fees provided in the sections enumerated are not fees, emoluments, perquisites or commissions of his office. The same contention was made in *Glaister v. Kit Carson County,* 22 Colo. App. 326, 123 Pac. 955, and in passing upon the question the court said: "The expression 'all fees, perquisites and emoluments' seems to require neither explanation nor definition. Words could scarcely have been better chosen to express the idea that the salary provided by law should be the sole compensation of the officer, and that all that was collected or received, above the amount of the salary, for services performed in his official capacity, should be turned into the county treasury. To argue that the provision means something different from or less than the obvious import of the words used would be palpable sophistry." To the same effect see, *El Paso County v. Shelden,* 59 Colo. 499, 149 Pac. 616; *People v. Brown,* 62 Colo. 125, 160 Pac. 1038.

It may be contended that some statutes respecting fees, emoluments, perquisites and commissions collected by county clerks and recorders are somewhat indefinite and ambiguous, but the provisions of sections 38, 39, 43 and 102, chapter 66, '35 C.S.A., are positive and definite. Section 41 of said chapter was repealed by S. L. 1945, p. 338, and the General Assembly, by enacting section 16, chapter 125, p. 337, S. L. 1945, again evinced a legislative intent to require all fees, emoluments, perquisites and commissions collected by a county clerk and recorder to be accounted for and placed in the proper fund in the office of the county treasurer, to be withdrawn therefrom only on warrants properly issued in payment of the salaries of such deputies and assistants as are necessary in the performance of their statutory duties.

When defendant moved for a summary judgment he had the burden of demonstrating clearly the

absence of any genuine issue of fact, and any doubt as to the existence of such an issue should have been resolved against him. *Hatfield v. Barnes,* 115 Colo. 30, 168 P. (2d) 552; *Avrick v. Rockmont. Envelope Co.,* 155 F. (2d) 568; *Sartor v. Arkansas Natural Gas Corp.,* 321 U. S. 620, 64 Sup. Ct. 724, 88 L. Ed. 967.

▉ Here, as we have said, plaintiff alleged that defendant had collected fees, emoluments, perquisites and commissions, a portion of which he had unlawfully and illegally appropriated to his own use, and that his taxes have been and will be increased by reason of such illegal and unlawful appropriation. These allegations are denied by defendant. True it is that defendant alleged in his third defense: "That all of said fees and taxes, as well as the portion thereof allowed to plaintiff [defendant] for the payment of extra clerk hire and other expenses of the administration of said act have been properly distributed, paid over and applied in accordance with said acts." These allegations and their denial clearly and positively demonstrate beyond doubt that there is presented a genuine issue of fact as to a material matter. Whether defendant had unlawfully and illegally appropriated fees, perquisites, commissions and emoluments or a portion thereof to his own use, and whether or not plaintiff was damaged directly or indirectly by reason thereof or by reason of defendants' failure or neglect to strictly comply with the statutes, can only be determined upon a trial of these issues. Issues of fact are for determination by the court or jury at a trial and may not be considered by the court on a motion for summary judgment. *Avrick v. Rockmont Envelope Co., supra; Sartor v. Arkansas Natural Gas Corp., supra.*

The record considered, the motion for summary judgment should have been denied.

The judgment, accordingly, is reversed and the cause remanded to the district court for further proceedings in harmony with the views expressed herein.

MR. JUSTICE HILLIARD dissents.

MR. JUSTICE HILLIARD dissenting.

Plaintiff in error, plaintiff below, proceeding by an amended complaint, and in recognition of the rule that personally he could not maintain the action here, alleged that he was a taxpayer and otherwise pleaded facts calculated to qualify him to maintain it derivatively, that is to say, in behalf of the board of county commissioners of Pueblo county, made a party defendant, which, as plaintiff further alleged, had refused to proceed against defendant for certain funds said to belong to the county, collected by defendant clerk and recorder and retained by him. More particularly, and in identification of the funds involved, plaintiff alleged (some words of which I italicize) that defendant, *"as clerk and recorder of Pueblo county, has collected for the use and benefit of Pueblo county,* fees, perquisites, commissions and emoluments of his office of county clerk pertaining to the issuance of certificates of title to motor vehicles, motor vehicle operator's licenses, chauffeur's licenses and for the collection of specific ownership taxes on motor vehicles during all of his tenure of office. * * * and has failed and neglected to pay said fees, perquisites, commissions and emoluments to the county treasurer as provided by law." Thus based, the prayer was that defendant, "as clerk and recorder, * * * be compelled to account to the defendant, the board of county commissioners of the county of Pueblo, for all fees, perquisites, commissions and emoluments of his office collected for the issuance of certificates of title, operator's licenses, chauffeur's licenses and for the collection of specific ownership taxes on motor vehicles in the county of Pueblo." Defendant, admitting that he is, and has been, clerk and recorder of Pueblo county as alleged by plaintiff, answering the amended complaint, challenged the sufficiency thereof to state a claim upon which relief can be granted, and denied generally. Further answering, defendant alleged

that, "as agent of the Motor Vehicle Department of the State of Colorado, under the provisions of the applicable statutes, [he] has collected fees for the issuance of certificates of title to motor vehicles, motor vehicle operators' licenses, and chauffeurs' licenses during all of his tenure of office and has collected specific ownership taxes on motor vehicles since the effective date of the act providing therefor, being the year 1938. That all of said fees and taxes, as well as the portion thereof allowed to defendant for the payment of extra clerk hire and other expenses of the administration of said act have been properly distributed, paid over and applied in accordance with said acts. That neither such funds nor any part thereof were or are perquisites, commissions or emoluments of the defendant as clerk and recorder or individually." In a further answer, defendant pleaded the statute of limitations as to all matters alleged to have occurred "more than six years prior to the date of the commencement of this action, to wit, June 10, 1946," which was sustained below, and is affirmed by the court in its opinion here, a ruling in which I concur. I emphasize that ruling at this point because it obviates the necessity of extended examination and discussion of statutes other than those in force on and after June 10, 1940, which, as my study convinces, are section 3, chapter 94, page 334, S.L. '37, in so far as not changed or modified by the act of 1939, and sections 93 and 94, chapter 75, pages 231, 232, S. L. '39, (§§93, 93(1) and 94, c. 16, '46 Supp., '35 C.S.A.). In the order these sections appear in the '46 Supplement, they read as follows:

"§93. The county clerk and recorder in each county in the State of Colorado, except that in the City and County of Denver the manager of revenue, is hereby designated as the authorized agent of the department for the administration of provisions of this article relating to registration of motor vehicles in such county, provided, that any such authorized agent in a county shall have the power to appoint and employ such motor vehicle registration and

license clerks as are actually necessary in the issuance of motor vehicle licenses, and shall receive for the purpose of defraying such expenses a sum equal to fifteen cents per paid motor vehicle registration and registration requiring a metallic plate or plates, to be allowed and paid by the secretary of state as provided for in this article; provided, further, that said county clerks and recorders so designated as the authorized agents of the secretary of state, as herein provided, shall serve as such authorized agents under the provisions of this article without additional remuneration or fees, except as otherwise provided herein. [L. '31, p. 494, §14; L. '37, p. 334, §2; L. '39, p. 231, §7]

"§93(1). County clerks and recorders, and the manager of revenue in the City and County of Denver, are hereby authorized to retain fifteen cents out of the moneys collected by them on each specific ownership tax, which said fifteen cents shall be the only fee allowed county clerks and recorders, and the manager of revenue in the City and County of Denver, for collecting specific ownership taxes and issuing receipts therefor. In counties of the fifth class the sums so retained by the county clerk and recorder shall be used in defraying the necessary expenses in connection with the collection and administration of specific ownership taxes as directed by this act, but in the City and County of Denver, the manager of revenue, and in all other counties above the fifth class the county clerk and recorder, shall deposit in the general fund of said city and county, or of said county, all such sums so retained hereunder; and the necessary costs of said collection and administration shall be paid by regular warrant of said city and county, or county, upon voucher duly submitted and approved. [L. '37, p. 334, §3.]

"§94. Every county clerk and recorder or other person designated as an authorized agent of the department for the administration of the provisions of this article shall, on or before the fifteenth day of each calendar

month, transmit to the department all fees and moneys collected by such agent under the provisions of this article during the preceding calendar month, except such sums as are by this article specifically authorized to be retained by said county clerk, together with a complete report of all vehicles registered and all licenses issued in said county during said previous month, such reports to be made on blank report sheets to be furnished free by the department. It is provided further that the county clerks and recorders or other agents shall deposit weekly all moneys received in the administration of this or any other motor vehicle license law with the county treasurers of their respective counties, and take a. receipt therefor, said moneys to be .kept in a separate fund by said county treasurers, and the county clerks and recorders or other agents shall not be held liable for the safe keeping of such funds after so depositing them. Said county treasurers shall accept all moneys tendered to them by the county clerks for deposit as in this section provided. On or before the fifteenth day of each calendar month, the county clerk and recorder or other agents of the motor vehicle department shall send together with his monthly report to the motor vehicle department a warrant drawn on the county treasurer of his county, payable to the department on demand, covering the amount of such funds that may have been deposited with the said county treasurer the previous month, and the county treasurer shall pay such warrant on demand and presentation of same by the legal holders thereof. [L. '31, p. 495; §15; L. '39, p. 232, §8]"

Considering that the sufficiency of plaintiff's allegations is formally challenged by defendant, the over-all question is, Do the funds, or any part thereof, which arise from the administration of "The Motor Vehicle Department" belong to the several counties? Or, in this instance, to Pueblo county? The "Department," reads the statute, consists "of the Secretary of State, acting directly or through his duly authorized officers, agents

and employees." Who are the department's agents? In the City and County of Denver, currently, as the statute provides, it is the manager of revenue, and in the several other counties it is the county clerk and recorder. In short, the administration pertaining to motor vehicles is a state, not a county, function. In the interest of promoting said state service, county clerks are designated as agents of the functioning state official, and, although the expense of extra clerk hire involved in rendering the state service constitutes a proper charge against the state's receipts from the activity in the several counties, and which the agents may "retain" for that purpose, the statute specifically provides that they shall not receive compensation for their own services in the premises. In connection therewith, as in fairness to defendant it should be stated, he has not claimed, nor does he claim, that, as agent of the secretary of state, or as county clerk, or in any representative capacity whatever, or personally, he is entitled to any of said fees, or compensation otherwise, or at all, for his services in the premises. Still, and inexplicably, as I respectfully submit, the court's opinion proceeds on the theory that defendant does claim compensation for such services, for it cites and reviews *Glaister v. Kit Carson County,* 22 Colo. App. 326, 123 Pac. 955, a case not in point on any other hypothesis. There, the county officer involved, as such, and in no other capacity whatever, received the fees in question by virtue of his county office, and, moreover, although already he had received his statutory salary in full, nevertheless claimed, and sought to retain, the surplus fees for himself, as of right. The county, claiming otherwise, sought to recover the excess fees from the official, and prevailed. Here, as is clear, defendant, as the statutory agent of the Motor Vehicle Department, a state agency, engaged in administering a state activity (his county being in nowise interested therein—only the state, not complaining), has collected for the "issuance of title to motor vehicles, motor vehicle operator's li-

censes, and chauffeur's licenses," etc., throughout the years of his encumbency as county clerk, and since 1938, when the law in relation thereto went into effect, "specific ownership taxes on motor vehicles." Although the law requires that the clerk make deposit of the funds arising from such collections in the county treasury, no part thereof belongs to the county, nor may such funds be withdrawn from the county treasury by the board of county commissioners, but only by the county clerk whose warrants must run in favor of the state motor vehicle department. By means thus devised the funds reach the state treasury, where they belong, and from whence they may be disbursed. Before the clerk deposits the funds in the county treasury, however, and for the purpose of discharging the expense involved in acting as the state's agent in his county, the clerk shall deduct therefor, and retain, fifteen cents per item of "registration of motor vehicles" (§93), and the like fee per item of "specific ownership taxes" collected. §93(1). The fees mentioned in section 93, are adjusted directly by the state motor vehicle department, while as to the fees mentioned in section 93(1), assuming it differs materially or in the sense that a taxpayer may complain, to which I shall address myself later, language is employed from which plausibly it may be argued that the county, as such, is interested in the fees, hence, that it (or a taxpayer for it) may require the county clerk, agent of the state, to account to the board of county commissioners, etc.

Before analyzing the statutes involved in the present inquiry, it is well to emphasize that neither therein, nor in any earlier statute, is there provision that any funds arising from the administration of the law, shall inure to the benefit of the several counties. While by certain provisions of the law county clerks (statutes cited supra) specifically are denied the right to be compensated therefor, and county treasurers, not granted compensation, are required to aid the state in such administration

by collecting and safeguarding funds arising therefrom, such county officers do not represent or serve their counties in the matter, nor are they accountable other than to the state. In short, the administration of the motor vehicle law is by, of and for the state, acting through its agents. Should the state's agent county clerk fail to collect in behalf of the state, and, particularly, should he neglect to deposit the collections he makes in the county treasury, the state, not the county, may proceed against him. Or, should the county treasurer fail to pay the funds so deposited with him to the state motor vehicle department in manner required by the law, the state, not the board of county commissioners, may require such payment. In no material sense, therefore, does a county have interest in funds arising from the administration of the law involved, nor, as such, is it weighted with duties, or clothed with authority, in relation thereto.

It is in order now to examine somewhat minutely the sections of the law particularly applicable to this inquiry. In the interest of clarity I shall quote from the statutes, and in instances italicize some of the quoted language. Practically from the inception of the law, county clerks have represented the state agency in the matter of "the administration of provisions of this article relating to *registration of motor vehicles*" in their several counties. §93. To perform the duties required, "such authorized agent in a county shall have the power to appoint and employ" clerks, etc., "and shall receive for the purpose of defraying such expenses a sum equal to fifteen cents *per paid motor vehicle registration*," etc., "to be allowed and paid by the secretary of state," etc. §93. By section 93(1), not effective until 1938, county clerks were given the added duty of "collecting specific ownership taxes," and were "authorized to retain fifteen cents out of the moneys collected by them on *each specific ownership tax*," to cover "costs of said collection and administration," and under this section (not under §93) in counties of the class of Pueblo, the clerk "shall de-

posit in the general fund * * * of said county, all sums so retained hereunder; and the necessary costs of collection and administration shall be paid by the regular warrant of said * * * county, upon vouchers duly submitted and approved." Section 94 provides that the clerk, as an "authorized agent of the department for the administration of the provisions of this article shall, on or before the fifteenth day of each calendar month, transmit to the department all fees and moneys collected by such agent under the provisions of this article during the preceding calendar month, except such sums as are by this article specifically authorized to be retained by said county clerk, together with a complete report," etc. That section also provides that the clerks shall "deposit weekly all moneys received in the administration of this or any other motor vehicle license law with the county treasurers of their respective counties, and take a receipt therefor, said moneys to be kept in a separate fund by said county treasurers," and thereafter the county clerk (agent of the department) "shall not be held liable for the safe keeping of such funds. * * * On or before the fifteenth day of each calendar month" the clerk shall send to the motor vehicle department a monthly report and a "warrant drawn on the county treasurer of his county, payable to the department on demand, covering the amount of such funds that may have been deposited with said county treasurer the previous month," etc.

Considering that from the inception of the act, the legislature contemplated a state—not a county—activity, and the attempt in 1937 (§93[1]), to subject the administration of the collection of "specific ownership taxes" to limited county control, in no sense promotive of the county's fortunes, it is not surprising that the board of county commissioners of Pueblo county voiced its wish to abstain from the exercise of responsibility in a matter which did not concern the county, as such, and moved to be dismissed from the action. That motion was granted

below, to which ruling, as the court in its opinion states, "plaintiff did not object." The 1937 act provides that the county clerk (state's agent) shall "retain fifteen cents" per item, not for himself, nor for his county, but to cover "costs of collection and administration" of the ownership tax features of the law, and then adds the *clumsy* provision requiring the state's agent to pay the "retained" amount into the county treasury, and expend it on the theory that the county owed the sum thereof to the same state's agent, which it should pay by its warrants. Sections 93 and 93(1), although both pertain to the motor vehicle act, in the particular indicated are inconsistent. This manifest inconsistency, as my study convinces, became evident to the 1939 General Assembly, and by the act of that year (§94), it emphasized anew that the administration of the motor vehicle law is of state control, the only public entity having, or to have, interest in funds arising, and to arise, from the operation thereof. It follows, of course, that since Pueblo county, as such, has, and can have, no interest in the receipts of the state motor vehicle activity, its board of county commissioners, if so willed, not so, as we have seen, proceeding on allegations corresponding to those here, could not maintain the present action, so, a fortiori, plaintiff, as a taxpayer, may not maintain it. Consistently, as I am convinced, the challenge to the sufficiency of plaintiff's allegations is well-founded, and that, in itself, justifies the trial court's judgment of dismissal of the action.

But the foregoing is not all. Not only does insufficiency of allegations appear, but it also appears that defendant, proceeding pursuant to Rule 56(b), R. C. P. Colo., and timely, filed a motion, with supporting affidavit, for summary judgment. The motion, supported as stated, was to the effect that plaintiff's counsel openly concedes, that, "he cannot prove, and does not expect to prove, that either the County of Pueblo, or the State of Colorado, has lost any money whatsoever on account

of the matters and things in said complaint alleged."
Incidentally, as may be mentioned, so far as the state is
concerned, plaintiff's concession is gratuitous, for that
entity is not complaining, nor is it a party.

Why, I respectfully submit, should this plaintiff be
accorded the right to continue to burden the veteran
public servant made defendant here, chosen and repeat-
edly rechosen by a free electorate to the office of clerk
and recorder in his county, with annoying, harassing,
and expensive litigation? The record proper does not
justify it, and concession of plaintiff's counsel marks the
futility thereof. "The Honorable Raymond L. Sauter,
Judge [called from a distant part of the state]," as the
record recites, "sitting for and at the request of the Hon-
orable J. Arthur Phelps, Judge of the Tenth Judicial
District," made the rulings and pronounced the judg-
ment of dismissal to which I have adverted. The dis-
tinguished jurist, proceeding after the manner of those
who are learned in the law, and with judge-like dignity
and reserve, delivered a compelling opinion from the
bench, justifying his conclusions in the premises. I com-
mend its reading.

I feel justified in adding that plaintiff appears in no
new role. Indeed, he appears to have a flair for insti-
tuting actions against public officials. In an earlier ap-
pearance here, he was prosecuting a writ of error to
an adverse judgment of the district court in an action
he instituted to have the late Ralph L. Neary removed
from the office of district attorney of the tenth judicial
district, for that, as alleged, Major Neary had accepted
service "in the armed forces of the United States,"
which, forsooth, operated as a resignation or vacation of
his civil office. The trial court, as already stated, was
not of that view, nor were we. *People ex rel. Flanders
v. Neary,* 113 Colo. 12, 153 P. (2d) 48. I do not cite the
Neary case on the theory that there, or here, plaintiff in
error acted, or is acting, without or beyond the scope of
what may be said to be one of the "freedoms" which are

the heritage of the American citizen; but notwithstanding the right of plaintiff in error to employ counsel and otherwise finance litigation, to prevail he must have a " case." He had none in the Neary presentation, and, as I am convinced, has none here, precisely as was adjudged at nisi. The judgment should be affirmed.