854 P.2d 791 (1993)
In the Matter of the Application for Water Rights of the United States of America in Water Division 4, State of Colorado.
DOMINGUEZ RESERVOIR CORPORATION, Assignee of the Water Rights of the United States of America, Appellant,
v.
Arlan W. FEIL and Edwin A. Hintz, State of Colorado State Engineer and Division Engineer For Water Division 4, Southeastern Colorado Water Conservancy District, City and County of Denver, Acting by and through Its Board of Water Commissioners, Upper Gunnison River Water Conservancy District, Board of County Commissioners of the County of Arapahoe, Leroy Harris, City of Grand Junction, Northern Colorado Water Conservancy District and Municipal Subdistrict, and Tri-State Generation and Transmission Association, Inc., Appellees.
No. 92SA101.
Supreme Court of Colorado, En Banc.
June 7, 1993.
*792 Sabey, Epstein, Ordelheide & Smith, P.C., Melvin B. Sabey, Mark L. Sabey, Denver, for appellant.
Moses, Wittemyer, Harrison and Woodruff, P.C., Charles N. Woodruff, Steven P. Jeffers, Boulder, for appellees Arlan W. Feil, Edwin A. Hintz, and Tri-State Generation and Transmission Ass'n, Inc.
Van C. Wilgus, Denver, for appellee Tri-State Generation and Transmission Ass'n, Inc.
Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Steven O. Sims, Asst. Atty. Gen., Natural Resources Section, Denver, for appellee State Engineer and the Div. Engineer for Water Div. 4.
Fairfield and Woods, P.C., Howard Holme, Stephen H. Leonhardt, Miriam S. Mazel, Denver, for appellee Southeastern Colorado Water Conservancy Dist.
Patricia L. Wells, Michael L. Walker, Henry C. Teigen, Casey S. Funk, Mary K. Brennan, Denver, for appellee the City and County of Denver, acting by and through its Board of Water Com'rs.
Bratton and Associates, L. Richard Bratton, John H. McClow, Gunnison, for Upper Gunnison River Water Conservancy Dist.
Krassa, Lindholm, Kumli & Madsen, Robert F.T. Krassa, Boulder, for appellee Board of County Com'rs of the County of Arapahoe.
No Appearance on Behalf of appellee Leroy Harris.
No Appearance on Behalf of appellee City of Grand Junction.
Hobbs, Trout, & Raley, P.C., Gregory J. Hobbs, Jr., Robert V. Trout, Denver, for appellee Northern Colorado Water Conservancy Dist. and Mun. Subdistrict.
Justice VOLLACK delivered the Opinion of the Court.
The Dominguez Reservoir Corporation (the DRC), as assignee of the water rights of the United States of America (the United States), appeals the ruling of the water court that the United States lacked the requisite intent to appropriate water, and the order of the water court granting various objectors' motions for summary judgment. We reverse and remand for further proceedings consistent with this opinion.

I.
On December 28, 1971, the United States of America (the United States) filed an application seeking water rights in connection with the following: (1) the West Divide Project; (2) the Dallas Creek Project; (3) the Fruitland Mesa Project; (4) the Upper Gunnison Project; (5) the Uncompahgre Extension Project; (6) the Grand Mesa Project; and (7) the Uncompahgre Valley Project. The application was filed in Water Division No. 4. The Uncompahgre Extension Project was subsequently renamed "the Dominguez Reservoir Project."
On July 2, 1973, the United States filed an amended application and statements of claims. The United States sought to establish the above-mentioned rights in addition to other rights at issue in separate application proceedings.[1] The United States also *793 sought to modify the priority dates of some of the water rights.
On November 2, 1987, the United States executed an assignment of its application for conditional water rights for the Dominguez Reservoir Project to the Colorado River Water Conservation District.[2] Approximately two years later, on January 23, 1989, the Colorado River Water Conservation District assigned the application for conditional rights back to the United States. On April 26, 1989, the United States assigned its application for conditional water rights regarding the Dominguez Reservoir Project to the City of Grand Junction. On May 9, 1989, the City of Grand Junction transferred its rights to the DRC.
On July 25, 1991, the DRC filed a motion pursuant to C.R.C.P. 25(c),[3] asking the court to substitute the DRC for the United States as the applicant with respect to the following water rights: (1) the Dominguez Reservoir; (2) the Dominguez Penstock and Power Plant; (3) the Gibbler Reservoir; and (4) the Gibbler Power Plant and Pump Unit.[4] In a brief filed in support of the motion, the DRC noted that the claimed date of appropriation for the Dominguez Project water rights was July 8, 1948, but, due to "subsequent negotiations," the United States amended its application to seek a priority date of December 29, 1971. The DRC subsequently stipulated that it would not seek a priority date earlier than December 29, 1971. The DRC noted that the United States claimed to have initiated the rights because it possessed the requisite intent and took the requisite actions to create a conditional water right.
On September 3, 1991, various objectors[5] filed a motion for summary judgment contending that the United States lacked the necessary intent to initiate the claimed appropriations under Colorado law. The objectors alternatively claimed that, even if the United States did initiate valid appropriations, it failed to prosecute the claims with reasonable diligence. Lastly, the objectors argued that the DRC could not revive the claims that the United States had abandoned. The objectors filed a second motion on that date, alleging that the DRC could not proceed in the name of the United States.
In support of its summary judgment motion, the objectors attached a copy of a report dated April, 1984, wherein the Bureau of Reclamation (the Bureau) prepared a planning report for the Dominguez Reservoir Project, which presented the results of the Bureau's feasibility investigations. The report noted that a 1981 study indicated that
[s]everal other projects in the market area could provide peaking power at earlier dates and at lower installed costs per k[w]h than the Dominguez [Reservoir Project].... and [that] the Dominguez [Reservoir Project] not be implemented until the power became more marketable, or until it became more competitive in terms of cost.
The report discussed numerous general plans based on their completeness, effectiveness, efficiency, and acceptability. The report concluded that "[t]he investigations were concluded since, based on the above discussion of [the] plans, it was not possible for [the Bureau] to recommend [a] plan for construction."
*794 A letter subsequently written by the regional director of the Bureau to the director of the Colorado Water Conservation Board was also attached to the objectors' summary judgment motion. The regional director stated in the letter that the Bureau "studied the Dominguez Project for several years and was unable to formulate a viable project." A second letter, authored by a regional director of the Bureau stated that "[r]eclamation studies on the proposed Dominguez Project were discontinued in 1984." The memorandum additionally noted that the "Dominguez Advisory Council" renewed investigations on the project in 1986.
On October 17, 1991, the DRC filed a cross-motion for summary judgment, alleging that, among other things, the intent to appropriate water existed on the date that the application for the conditional water rights was filed. The DRC filed a motion opposing the objectors' motion for summary judgment. The DRC attached the affidavit of J.F. Rinckel to its motion. The affidavit established that Rinckel was an employee of the Bureau from 1954 through 1985. The affidavit reviewed several reports that were attached to the affidavit as exhibits. The affidavit noted that a March 1964 report titled "The Colorado River" identified the Dominguez Project as one of 134 potential projects. According to the affidavit, after the Bureau prepared a series of maps and reports from 1948 through 1950, the Bureau prepared a project planning report in July of 1950 and a river storage project and planning report in December of 1950. Both reports recommended that a dam and reservoir be constructed. Specifically, the report stated that
[t]he dam would be a rolled, earth-filled embankment with a volume of 6,656,000 cubic yards. It would rise 255 feet above stream bed and 335 feet above bedrock. The crest would be at elevation 4,890 feet, 10 feet above the normal water surface elevation. The crest would be 1,830 feet in length. To complete the reservoir basin three dikes would be constructed in low saddles on the north side of Kannah Creek about 4 miles upstream from the dam.
The reservoir formed by the dam and dikes would have a total initial capacity of 880,000 acre-feet, including an active capacity of 470,000 acre-feet and an inactive capacity of 410,000 acre-feet. In 200 years silt deposits would reduce the active capacity to 326,000 acre-feet and the inactive capacity to 92,000 acre-feet. When filled to capacity, the reservoir would have a water surface area of 10,250 acres and would extend about 35 river miles upstream to a point about 4 miles west of Delta, Colo[rado].
A proposed map of the reservoir and dam was also attached to the affidavit.
Several objectors filed a response to the DRC's cross-motion for summary judgment, to which was attached a report dated January, 1972. The January, 1972, report stated that
[t]he extension plan would involve the construction of the Dominguez Dam forming a 298,000 acre-foot lake on the Gunnison River downstream from the existing project area....
The extension plan would offer potentialities for hydroelectric power development that are not evaluated in the present report. A small powerplant located at the toe of Dominguez Dam could utilize releases from the lake for power generation. A large pumped storage power development up to several million kilowatts in capacity could be provided by construction of Gibbler Reservoir, tunnels between Dominguez Lake and Gibbler Reservoir and pumping-generating units at the lower end of the tunnels.
Construction costs are estimated at $43,000,000 for the improvement plan and $45,200,000 for the extension plan without consideration of the potential hydro power development.
On January 17, 1992, the water court ruled that the DRC may be substituted for the United States with respect to the application for conditional water rights. In a separate order entered on that date, the water court ruled that
*795 The work done by the United States did not demonstrate an intent to use the water for a definite purpose. It demonstrated interest in the project in general and reconnaissance investigations but lacked specific recommendations. No attempts were made to actually construct the project and no contracts were entered into for use of the water from the project. In 1984, the Bureau of Reclamation planning report indicated the Bureau did not find the project feasible or justifiable.
The filing of the application alone is not sufficient to establish the appropriation in this case because nothing other than the general studies and proposals lacking sufficient specificity had been done at that time.
The water court entered judgment on the objectors' motion for summary judgment, and the instant appeal followed. Since the water court entered its orders on the objectors' motion for summary judgment, we first review well-settled principles of summary judgment before examining the propriety of the water court ruling.

II.

A.
"Summary judgment is a drastic remedy and should be granted only upon a clear showing that there is no genuine issue as to any material fact." Peterson v. Halsted, 829 P.2d 373, 375 (Colo.1992) (relying on Jones v. Dressel, 623 P.2d 370, 373 (Colo.1981)). Thus, "even where `it is extremely doubtful that a genuine issue of fact exists,' summary judgment is not appropriate." Mancuso v. United Bank of Pueblo, 818 P.2d 732, 736 (Colo.1991) (quoting Abrahamsen v. Mountain States Tel. & Tel. Co., 177 Colo. 422, 428, 494 P.2d 1287, 1290 (1972)). We have stated
that no matter how enticing, in an era of congested dockets, is a device to dispose of cases without the delay and expense of traditional trials with their sometime cumbersome and time-consuming characteristics, summary judgment was not devised for, must not be used as, a substitute for trial.... Consequently, where the proceedings have indicated that a genuine issue existed, we have consistently rejected appealing shortcuts and not the less so even though it was likely that on a trial, the trier would resolve the disputed issues as one of fact in the same manner as when thought to have been one of law alone.
Mt. Emmons Mining Co. v. Town of Crested Butte, 690 P.2d 231, 239 (Colo.1984) (quoting Bruce Constr. Corp. v. United States, 242 F.2d 873, 874 (5th Cir.1957)); see Sullivan v. Davis, 172 Colo. 490, 496, 474 P.2d 218, 221 (1970) (also quoting Bruce Constr. Corp.). The fact that both parties simultaneously argue that summary judgment is appropriate because there is no disputed issue of fact "does not establish that a trial is unnecessary thereby empowering the court to enter judgment as it sees fit." 10A C. Wright et al., Federal Practice and Procedure § 2720 (2d ed. 1983); see Churchey v. Adolph Coors Co., 759 P.2d 1336, 1340 (Colo.1988) (relying on § 2720); see Morlan v. Durland Trust Co., 127 Colo. 5, 13, 252 P.2d 98, 102 (1952) (holding that the fact that both parties contend that there is no genuine issue as to any material fact does not bar the court from holding otherwise).
We have previously recognized that "[a]ny issue of [material] fact must be determined by the court or jury at a trial and should not be determined by the court on a motion for summary judgment." Primock v. Hamilton, 168 Colo. 524, 528, 452 P.2d 375, 378 (1969) (relying on Flanders v. Kochenberger, 118 Colo. 104, 193 P.2d 281 (1948), and Hatfield v. Barnes, 115 Colo. 30, 168 P.2d 552 (1946)); see Morlan, 127 Colo. at 10, 252 P.2d at 100 (quoting Michel v. Meier, 8 F.R.D. 464, 471) ("`In passing upon a motion for summary judgment, it is no part of the court's function to decide issues of fact but solely to determine whether there is an issue of fact to be tried.'").
"A material fact is simply a fact that will affect the outcome of the case." Peterson, 829 P.2d at 375; see Mt. Emmons, 690 P.2d at 239 ("In the context of summary judgment proceedings, a material fact is simply *796 a fact the resolution of which will affect the outcome of the case."). "Generally, the issue of a party's intent is a question of fact and is not an appropriate issue for summary disposition." Wolther v. Schaarschmidt, 738 P.2d 25, 28 (Colo.App.1986), cert. denied (1987) (reversing summary judgment in negligent misrepresentation action). We have thus stated that "[p]articularly on such issues as good faith, intent, and purpose, the bald declaration of a party by affidavit is not sufficient to resolve the issue in the face of a pleaded denial." Hatfield, 115 Colo. at 33, 168 P.2d at 554 (reversing summary judgment in unlawful detainer action where question remained as to plaintiffs' good faith).
The foregoing principles dictate that, in the present case, the water court impermissibly made findings of a material factthe United States' intent to appropriatewhen ruling on the summary judgment motions. We first review the law regarding applications for conditional water rights to set forth the framework with which to apply summary judgment principles to the water court ruling.

B.
"A conditional water right is defined as a `right to perfect a water right with a certain priority upon the completion with reasonable diligence of the appropriation.'" Colorado River Conservation Dist. v. City and County of Denver, 642 P.2d 510, 512 (Colo.1982) (quoting section 37-92-103(6), 15 C.R.S. 1973); see City of Thornton v. City of Fort Collins, 830 P.2d 915, 924 (Colo.1992) (following section 37-92-103(6)). We have consistently required applicants for conditional water rights to "demonstrate that an appropriation has been made and that the appropriation has been developed with reasonable diligence before the conditional decree will issue." Colorado River, 642 P.2d at 512. We have also repeatedly emphasized that "in evaluating whether an appropriation has been initiated, the trial court is to look at all the facts and circumstances in making its ad hoc determination." Id. (relying on Elk-Rifle Water Co. v. Templeton, 173 Colo. 438, 484 P.2d 1211 (1971)); see City of Thornton, 830 P.2d at 927 (holding that such determinations must be made on an ad hoc basis); Harvey Land and Cattle Co. v. Southeastern Colorado Water Conservancy Dist., 631 P.2d 1111, 1113 (Colo.1981) (holding that the sufficiency of an application must be determined on an ad hoc basis), Colorado River Water Conservation Dist. v. Vidler Tunnel Water Co., 197 Colo. 413, 417, 594 P.2d 566, 568 (1979) ("The facts of each case must be considered on an ad hoc basis to determine whether an appropriation has been initiated.").
In order to initiate an appropriation, an intent and an act must coexist. City of Thornton, 830 P.2d at 925; Colorado River, 642 P.2d at 512; Harvey, 631 P.2d at 1113; Vidler, 197 Colo. at 416, 594 P.2d at 568. "[T]he applicant for a conditional water right must have an intent to take the water and put it to a beneficial use." Colorado River, 642 P.2d at 512; see Harvey, 631 P.2d at 1113; Vidler, 197 Colo. at 416, 594 P.2d at 568 (relying on section 37-92-103(4), 15 C.R.S. (1973)). We have previously found that the filing of an application for a conditional water right was sufficient evidence of a party's intent to appropriate water. Twin Lakes Reservoir & Canal Co. v. City of Aspen, 557 P.2d 825, 828 (1977) (holding that, under the circumstances of that case, the fact of filing the application was evidence of intent); see City of Thornton, 830 P.2d at 926 (following Harvey and Twin Lakes); Harvey, 631 P.2d at 1113 (following Twin Lakes).
Based on the foregoing discussion, an application for a conditional water right turns in part on the existence of a claimant's intent to appropriate water. Thus, the issue of the United States' intent to appropriate water with respect to the Dominguez Reservoir Project is material, as it directly affects the outcome of the case.
The DRC produced the affidavit of J.F. Rinckel, a former employee of the United States Bureau of Reclamation, who served as chief of the planning division commencing in 1969. Rinckel stated in his affidavit that "the Bureau fully intended to proceed *797 with the Dominguez Project." In its order, the water court stated that
[t]he work done by the United States did not demonstrate an intent to use the water for a definite purpose. It demonstrated interest in the project in general and reconnaissance investigations but lacked specific recommendations....
The filing of the application alone is not sufficient to establish the appropriation in this case because nothing other than the general studies and proposals had been done at that time.
In so ruling, the water court impermissibly made a finding of a material fact as to the lack of the United States' intent to appropriate water, rather than determine whether a genuine issue of a material fact existed. See Primock, 168 Colo. at 528, 452 P.2d at 378 ("Any issue of [material] fact must be determined by the court or jury at a trial and should not be determined by the court on a motion for summary judgment."); Wolther, 738 P.2d at 28 ("Generally, the issue of a party's intent is a question of fact and is not an appropriate issue for summary disposition."). Both parties dispute whether the United States possessed the requisite intent to appropriate water. Since intent is a disputed material fact in the present case, summary judgment is not appropriate. Thus, even though the result may be the same at the conclusion of a trial, Mt. Emmons, 690 P.2d at 239, we reverse the water court ruling on the parties' motions for summary judgment and remand for further proceedings consistent with this opinion.
NOTES
[1] The additional rights at issue involved: (1) the Battlement Mesa Project; (2) the Bluestone Project; (3) the Middle Park project; (4) the Flattops Project; (5) the Savery-Pot Hook Project; (6) the Yellow Jacket Project; (7) the Lower Yampa Project; and (8) the Upper Yampa Project.
[2] The water rights were described as follows:

 Water
 Feature Right Amount
Dominguez Reservoir 880,000 acre-feet
Dominguez Penstock and
Powerplant 3,000 ft3/s
Gibbler Reservoir 37,300 acre-feet
Gibbler Powerplant and
Pump Unit 90,000 ft3/s

[3] C.R.C.P. 25(c) provides:

In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party.
[4] The DRC alternatively sought permission to proceed in the name of the United States.
[5] The objectors included the Southeastern Colorado Water Conservancy District, the City and County of Denver, the Upper Gunnison River Water Conservancy District, Arlan Feil and Edwin Hintz, among others.