2014 COA 116

**The PEOPLE of the State of Colorado, Petitioner–Appellee,**

**IN the INTEREST OF S.N., a Child,**

**and**

**Concerning S.N., a/k/a S.S., and M.A.S., Respondent–Appellants.**

**Court of Appeals No. 12CA2078**

Colorado Court of Appeals, Div. V.

Announced September 11, 2014

Ben Pearlman, County Attorney, Toni Gray, Assistant County Attorney, Jeanne Judge, Assistant County Attorney, Boulder, Colorado, for Petitioner–Appellee

Sharon M. Plettner, Guardian Ad Litem

Law Office of Poland & Wheeler, P.C., Scott Poland, Andrew Poland, Lakewood, Colorado, for Respondent–Appellant S.N.

Robert Lubowitz, Denver, Colorado, for Respondent–Appellant M.A.S.

Opinion by JUDGE FURMAN

¶ 1 In this prospective harm case, the trial court adjudicated the parents'· child, S.N., dependent and neglected by summary judgment. The case is before us again following a remand from our supreme court, which directed us to determine whether the "underlying material facts are undisputed" and, if they are, "apply the [dependency and neglect] statute to the facts and determine whether reasonable minds can draw differing inferences." *People in Interest of S.N.*, 2014 CO 64, ¶¶ 1, 24, 26, 329 P.3d 276 (*S.N. II*). We conclude that some of the underlying material facts are disputed, that some are undisputed, and that reasonable minds could draw differing inferences from those facts that are undisputed. We thus reverse the trial court's summary judgment and remand for an adjudicatory trial.

I. The Adjudication of S.N.
by Summary Judgment

¶ 2 The Boulder County Department of Human Services (Department) removed S.N. from her parents' custody at birth because a hearing on termination of parental rights involving the parents' three older children was pending. (The trial court had adjudicated the parents' older children dependent and neglected by summary judgment.)

¶ 3 The Department then petitioned the trial court to adjudicate S.N. dependent and neglected, alleging that there was a risk of prospective harm to S.N. if she were placed into the parents' care. Six days after S.N.'s birth, the trial court terminated the parents' rights to the three older children, also by summary judgment.

¶ 4 At the first appearance hearing, the parents denied the allegations in the petition and requested a jury trial. *See* § 19-3-

202(1), C.R.S.2013 ("At the first appearance of a respondent parent, . . . the court shall fully advise such party of his [or her]·legal rights, including the right to a jury trial . . . .").

¶ 5 But, the Department filed a motion for summary judgment, alleging there was a risk that the parents would not properly care for S.N. in the future because they had ongoing mental health issues, lived in an environment that would be injurious to S.N., and had mistreated their older children. Because S.N. had never been in the parents' care, the motion was based entirely on a theory of prospective harm.

¶ 6 In their responses, the parents denied these allegations and renewed their request for a jury trial.

¶ 7 The trial court entered summary judgment, in favor of the Department and against the parents, and adjudicated S.N. dependent and neglected. The court found as follows:

> Regardless of whether the Court's conclusion to terminate parental rights to the other three children was correct, the Court's factual and legal findings regarding their care in the previous [termination] order are incorporated into this order regarding both parents' failure to comply with the treatment plan, both parents' continual exhibition of the same problems addressed in the treatment plan and that have existed since the beginning of the case, their unfitness as parents, and the unlikeliness that they will become fit within a reasonable period of time.

## II. The Question of Prospective Harm to S.N.

¶ 8 The parents appealed. In *People in Interest of S.N.*, 2013 COA 157, ¶¶ 14–15, — P.3d — (*S.N. I*), we first considered whether summary judgment was ever appropriate in a dependency and neglect adjudication when a parent denies the allegations in a petition and requests a jury trial. We noted that "the right to a jury trial" in section 19–3–202 provides respondent parents with what appeared to be an unqualified statutory right afforded by the legislature, *id.* at ¶ 14, and that judges on our court were divided over this issue, *id.* at ¶ 15. But, instead of answering this more fundamental question, we reversed "on a narrower basis—using standards applicable to summary judgment." *Id.* at ¶ 16. Our holding was "premised on the trial court's prior summary judgment terminating the parents' relationships with their three older children." *Id.* at ¶ 1. We determined that the risk of prospective harm is a factual question and that "the parents' conduct and care of their other children" are probative, but not conclusive, of "how they might treat S.N. in the future." *Id.* at ¶ 32. We thus concluded that "the question of prospective harm is inappropriate for summary judgment" because prior conduct alone can never be sufficiently predictive of future conduct to take the question from a trier of fact by summary judgment. *Id.* at ¶ 33.

¶ 9 The supreme court disagreed with our analysis. It concluded that our "holding that prospective harm is purely a factual question is incorrect." *S.N. II,* ¶ 21. It then determined:

> Whether a child is dependent and neglected is a mixed question of fact and law because resolution of this issue necessitates application of the dependency and neglect statute to the evidentiary facts. Evidentiary facts are "the raw, historical data underlying the controversy." By contrast, an ultimate fact "involves a conclusion of law or at least a determination of a mixed question of law and fact [that] settles the rights and liabilities of the parties." Hence the material evidentiary facts, not the ultimate legal conclusion, must be undisputed in order for a court to grant summary judgment. We acknowledge that, even when the underlying material facts are undisputed, a court may not be able to determine with absolute certainty the future actions of the parents. But absolute certainty is not required. Rather the question is whether, by a preponderance of the evidence, the legal conclusion is established: whether, for example, if the child is returned to the parents, the child's environment will be injurious to his or her welfare. *See* § 19–3– 102(1)[, C.R.S. 2013]. Indeed, reviewing courts have previously approved of trial courts removing mixed questions of fact and law from the trier of

fact. For example, in negligence cases, reviewing courts have removed the issue of causation from the jury in response to both motions for summary judgment and motions for a directed verdict. Use of summary judgment or a directed verdict in negligence cases can be permissible because, for example, while the issue of causation in a negligence case is "generally to be resolved by the trier of fact[,] ... where the facts are undisputed and reasonable minds could draw but one inference, [the issue] is one of law to be decided by the court and taken from the jury."

Thus, if a reasonable trier of fact could not draw divergent inferences when applying the statute to the facts, summary judgment is appropriate. We therefore refuse to foreclose the possibility that in cases where the material underlying facts are undisputed, reasonable minds could only reach one conclusion about whether the statutory criteria are met. Thus, trial courts should evaluate whether to grant summary judgment in a dependency and neglect adjudication involving prospective harm on a case-by-case basis.

When applying a case-by-case analysis, courts can use traditional summary judgment standards because a dependency and neglect case alleging prospective harm is no different from any other case involving a mixed question of fact and law. The court must determine whether the material facts are disputed. If the material facts are undisputed, the court must apply the statute to the facts and determine whether reasonable minds can draw differing inferences. Depending on the undisputed facts of the case, summary judgment may be appropriate. See In re Tradale CC., 52 A.D.3d 900, 900–02, 859 N.Y.S.2d 288 (2008) (affirming the family court's grant of summary judgment in a neglect adjudication where the undisputed facts regarding the parent's past treatment of other children and current situation established by a preponderance of the evidence that there would be a substantial risk of harm if the newborn was placed with the parent).

S.N. II, ¶¶ 21–24 (footnotes and some citations omitted).

¶ 10 The supreme court then remanded the case to us "for proceedings consistent with this opinion." Id. at ¶ 26.

¶ 11 To address the issues on remand, we begin with a review of the procedural framework for adjudicatory trials in the Children's Code and traditional summary judgment standards. We then determine whether the "underlying material facts are undisputed" and, if they are, we "apply the [dependency and neglect] statute to the facts and determine whether reasonable minds can draw differing inferences." Id. at ¶¶ 1, 24, 26.

### III. The Procedural Framework for Adjudicatory Trials

¶ 12 The procedural framework for adjudicatory trials is contained in the Children's Code. See id. at ¶ 7. As our supreme court has recognized, "[t]he overriding purpose of the Children's Code is to protect the welfare and safety of children in Colorado by providing procedures through which their best interests can be ascertained and served. Article three, title 19, is the statutory framework for dependency and neglect proceedings." A.M. v. A.C., 2013 CO 16, ¶ 10, 296 P.3d 1026 (citation omitted); see S.N. II, ¶ 7; L.G. v. People, 890 P.2d 647, 654 (Colo.1995).

¶ 13 Within this framework, parents may request an adjudicatory trial. S.N. II, ¶ 9; see §§ 19–1–103(3), 19–3–202(2), 19–3–505(1), C.R.S.2013. At this trial, a fact finder, such as a jury, determines whether it has been proven by a preponderance of the evidence that a child is dependent and neglected. See A.M., ¶ 12. It is only after finding the child dependent or neglected that the state may intrude into the familial relationship to protect the safety of the child. S.N. II, ¶ 10; see A.M., ¶ 12; People in Interest of N.G., 2012 COA 131, ¶¶ 18–21, 303 P.3d 1207; People in Interest of A.M., 786 P.2d 476, 479 (Colo.App.1989).

¶ 14 That is because the "[Children's] Code strives to preserve the family while simultaneously ensuring the child's best interest and welfare," K.D. v. People, 139 P.3d 695, 698 (Colo.2006), and, under Troxel v. Granville, 530 U.S. 57, 65, 68, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), "there is a presumption that fit parents act in the best interests of

their children" (the *Troxel* presumption). The *Troxel* presumption is tied to parents' liberty interests, which "do[ ] not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State"; this presumption continues until a proper and final adjudicatory order has been entered. *People in Interest of A.M.D.*, 648 P.2d 625, 632 (Colo.1982) (internal quotation marks omitted); *N.G.*, ¶¶ 30–31; see *S.N. II*, ¶ 9 (To overcome the *Troxel* presumption, the People must prove, by a preponderance of evidence, that the "status of the subject child or children warrants intrusive protective or corrective state intervention into the familial relationship.") (internal quotation marks omitted). Thus, an adjudicatory order "is not meant to punish the parents," but, rather, to serve the best interests of the child by "prevent[ing] neglect or abuse." *S.N. II*, ¶¶ 9–10.

¶ 15 In *S.N. I*, ¶ 28, we noted that, although the term "prospective harm" is not defined in the Children's Code or in court opinions, "prospective" simply means "likely or expected to happen," *American Heritage Dictionary of the English Language* 1408 (4th ed. 2000), in "future situations," *S.N. II*, ¶ 12. And, "harm" means, among other statutory criteria, that "[t]he child lacks proper parental care through the actions or omissions of the parent . . .; the child's environment is injurious to his or her welfare; or a parent, guardian, or legal custodian fails or refuses to provide the child with proper or necessary subsistence, education, medical care, or any other care necessary for his or her health, guidance, or wellbeing." § 19–3–102(1)(b)–(d), C.R.S.2013; *S.N. II*, ¶ 12.

■ ¶ 16 Hence, to determine whether a child is dependent and neglected based on prospective harm, it must be determined whether it is " 'likely or expected' " that the child "will" lack proper parental care through the actions or omissions of the parent; the child's environment "will" be injurious to his or her welfare; or that a parent, guardian, or legal custodian "will" fail or refuse to provide the child with proper or necessary subsistence, education, medical care, or any other care necessary for his or her health, guidance, or well-being. *See S.N. II*, ¶ 12; *In re*

*L.C.*, 947 So.2d 1246, 1249 (Fla.Dist.Ct.App. 2007) (quoting *In re J.L.*, 824 So.2d 1023, 1025 (Fla.Dist.Ct.App.2002)).

■ ¶ 17 Prospective harm thus requires a prediction of whether, based on the parent's past conduct and current circumstances, it is likely or expected that the parent will fail to provide proper care for the child in the future.

■ ¶ 18 Thus, in making a prospective harm determination, facts about a parent's past treatment of his or her other children may be considered because the prior treatment could be probative of whether it is likely or expected that a parent will fail to provide proper care for another child. *See People in Interest of D.L.R.*, 638 P.2d 39, 42 (Colo.1981); *People in Interest of B.W.*, 626 P.2d 742, 743 (Colo.App.1981). And, facts about a parent's condition such as mental illness, *see D.L.R.*, 638 P.2d at 41–42, physical disabilities, *see B.W.*, 626 P.2d at 743–44, or incarceration, *see Jones v. Koulos*, 142 Colo. 92, 95–96, 349 P.2d 704, 706 (1960), or conduct such as drug use, *see L.L. v. People*, 10 P.3d 1271, 1273–74 (Colo.2000), or physical abuse and violence, *see B.W.*, 626 P.2d at 743, may also be considered, again, because they are also probative of whether it is likely or expected that a parent will fail to provide proper care for another child.

■ ¶ 19 But, in a case-by-case analysis, facts about a parent's past care of other children, or facts about a parent's condition or conduct, may or may not be dispositive in determining whether it is likely or expected that a child will be dependent and neglected in the parent's care in the future. This is because, to prove the statutory criteria for dependency and neglect, the Department could bring a case based on one or multiple facts relating to a parent's past care, condition, conduct, or other circumstances. And, the probative value of each fact will vary by case; in some cases, one fact might be sufficient and, in others, even multiple facts might not be sufficient. *See In re Dependency of L.S.*, 62 Wash.App. 1, 813 P.2d 133, 137–38 (1991) (the trial court's findings that the parents were unfit to parent two older children did not establish that the child was

dependent); *cf. People in Interest of N.D.V.*, 224 P.3d 410, 419 (Colo.App.2009) (each child is considered separately, and the trial court may terminate a parent's rights to one child even though another child has been returned to the parent); *People in Interest of D.L.C.*, 70 P.3d 584, 588 (Colo.App.2003) ("A parent may be unfit as to one, but not all, of his or her children.").

¶ 20 Having outlined the adjudicatory framework, we now address traditional summary judgment standards. *S.N. II,* ¶ 24.

## IV. Traditional Summary Judgment Standards

¶ 21 C.R.C.P. 56(c) allows a court to grant a motion for summary judgment before trial "when the pleadings and supporting documents establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Gibbons v. Ludlow*, 2013 CO 49, ¶ 11, 304 P.3d 239.

¶ 22 Because summary judgment "denies litigants their right to [a] trial," it is a "drastic remedy," and is "never warranted except on a clear showing that there is no genuine issue as to any material fact." *Ginter v. Palmer & Co.*, 196 Colo. 203, 205, 585 P.2d 583, 584 (1978); *see S.N. II,* ¶ 15 (summary judgment is a "drastic remedy" (internal quotation marks omitted)); *Brodeur v. Am. Home Assur. Co.*, 169 P.3d 139, 146 (Colo. 2007).

¶ 23 A material fact is a fact that, when resolved, "will affect the outcome of the case." *Dominguez Reservoir Corp. v. Feil*, 854 P.2d 791, 795 (Colo.1993) (internal quotation marks omitted); *see City of Aurora v. ACJ P'ship*, 209 P.3d 1076, 1082 (Colo.2009); *Anderson v. Vail Corp.*, 251 P.3d 1125, 1127 (Colo.App.2010). "Because the trial court may not assess the weight of the evidence or credibility of witnesses in determining a motion for summary judgment, the court may not grant summary judgment when there is a controverted factual issue that must be resolved in a trial." *Kaiser Found. Health Plan of Colo. v. Sharp*, 741 P.2d 714, 718 (Colo.1987).

¶ 24 Material facts that generally require weighing of the evidence include "such issues as good faith, intent, and purpose," and "the bald declaration of a party by affidavit is not sufficient to resolve [these issues] in the face of a pleaded denial." *Dominguez Reservoir Corp.*, 854 P.2d at 796 (internal quotation marks omitted); *see Wolther v. Schaarschmidt*, 738 P.2d 25, 28 (Colo.App.1986). Where reasonable people could reach different conclusions about the evidence, summary judgment is not appropriate. *See City of Aurora*, 209 P.3d at 1082; *Mt. Emmons Min. Co. v. Town of Crested Butte*, 690 P.2d 231, 239 (Colo.1984).

¶ 25 The burdens to show a dispute about whether there is a genuine issue of material fact are as follows. "The moving party has the initial burden to show that there is no genuine issue of material fact." *AviComm, Inc. v. Colo. Pub. Utils. Comm'n*, 955 P.2d 1023, 1029 (Colo.1998); *see S.N. II,* ¶ 16 (The moving party must "establish[ ] that no disputed material facts exist."); *Kaiser Found. Health Plan*, 741 P.2d at 718–19.

¶ 26 Because the initial burden is on the moving party, if the moving party does not meet this burden, summary judgment must be denied. *See Wolther*, 738 P.2d at 28 ("[If] the moving party's proof does not itself demonstrate the lack of a genuine factual issue, summary judgment is inappropriate."); *see also Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1340 (Colo.1988).

¶ 27 But, if the moving party meets its burden, the burden shifts to the nonmoving party to "adequately demonstrate by relevant and specific facts that a real controversy exists." *City of Aurora*, 209 P.3d at 1082; *see S.N. II,* ¶ 16 ("Only if" the moving party meets its burden "must the opposing party then demonstrate a controverted factual question."); *AviComm, Inc.*, 955 P.2d at 1029.

¶ 28 Then, if the nonmoving party "fails to establish a controverted factual question," summary judgment should still only be granted "in a narrow set of circumstances." *S.N. II,* ¶ 18. These circumstances include when "the material facts are undisputed [and] also that reasonable minds could draw

but one inference from them." *Id.* (internal quotation marks omitted).

¶ 29 Nevertheless, if the nonmoving party meets its burden and shows that a controversy exists, summary judgment must be denied. *See Struble v. Am. Family Ins. Co.*, 172 P.3d 950, 955 (Colo.App.2007). Any dispute over a material fact must then be resolved at trial. *See Dominguez Reservoir Corp.*, 854 P.2d at 795–96; *see Mt. Emmons Min. Co.*, 690 P.2d at 239 (Summary judgment is reserved *"only"* for cases "where there is no dispute as to material facts and thus no role for the fact finder to play" at a trial.) (emphasis in original).

¶ 30 We review de novo whether summary judgment is appropriate, *Gibbons*, ¶ 11, and look to the "pleadings and supporting documents" in reviewing whether the moving party showed the absence of a genuine issue of material fact, *Aspen Wilderness Workshop, Inc. v. Colo. Water Conservation Bd.*, 901 P.2d 1251, 1256 (Colo.1995); *see* C.R.C.P. 56(c) (Courts may review the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any."). When looking to the pleadings and supporting documents, we are guided by the following "very stringent" principles, *Trinity Broad. of Denver, Inc. v. City of Westminster*, 848 P.2d 916, 925 (Colo.1993):

- We view the facts in the light most favorable to the nonmoving party. *S.N. II*, ¶ 16; *Struble*, 172 P.3d at 955; *see Brodeur*, 169 P.3d at 146 ("[T]he nonmoving party is entitled to the benefit of all favorable inferences reasonably drawn from the undisputed facts; all doubts must be resolved against the moving party.").

- "[E]ven where it is extremely doubtful that a genuine issue of fact exists, summary judgment is not appropriate." *Dominguez Reservoir Corp.*, 854 P.2d at 795 (internal quotation marks omitted); *see Abrahamsen v. Mountain States Tel. & Tel. Co.*, 177 Colo. 422, 428, 494 P.2d 1287, 1289–90 (1972) ("not[ing] again that summary judgment is not appropriate in cases of doubt," even where it was "extremely doubtful" that a genuine issue of material fact existed).

¶ 31 We conclude with a few additional observations about summary judgment. It "'is not a substitute for [a] trial.'" *S.N. II*, ¶ 15 (quoting *Mt. Emmons Min. Co.*, 690 P.2d at 239). Thus, a trial court may not grant summary judgment merely to "shortcut[ ]" a trial, *Mt. Emmons Min. Co.*, 690 P.2d at 239, "no matter how enticing [given] congested dockets," *S.N. II*, ¶ 15 (internal quotation marks omitted). Accordingly, a trial court may deny litigants a trial only when "as a matter of law, based on undisputed facts, one party could not prevail." *Mt. Emmons Min. Co.*, 690 P.2d at 238 (internal quotation marks omitted); *see Gen. Ins. Co. of Am. v. City of Colo. Springs*, 638 P.2d 752, 760 (Colo.1981).

## V. Prospective Harm to S.N.

¶ 32 The Department contends that it was undisputed that S.N. would be prospectively harmed by the parents if she were to be placed in their care. *See* § 19–3–102(1)(b)–(d). The Department bases its contention on the following facts: (1) the trial court had terminated mother's and father's parental rights to the older children following S.N.'s birth; (2) father had three other children that were adjudicated dependent and neglected and not returned to his care; (3) father suffered from a "long-standing chronic mental health illness in the nature of a personality disorder" that impacted his parenting skills and would create an injurious environment for S.N.; and (4) mother suffered from a "distorted dependence" on father which impacted her ability to meet S.N.'s needs and would create an injurious environment for S.N.

¶ 33 We initially conclude that these facts are material and could affect the determination of whether S.N. should be adjudicated dependent and neglected. *See Dominguez Reservoir Corp.*, 854 P.2d at 795–96. We arrive at this conclusion because S.N. could potentially be adjudicated dependent and neglected based on evidence of the parents' past treatment of their other children and evidence of their having conditions or conduct that could pose a risk to S.N. *See D.L.R.*, 638 P.2d at 42.

### A. Whether the Material Facts are Undisputed

¶ 34 We conclude that it was undisputed that the prior adjudications and terminations of parental rights occurred and that father has been diagnosed with a mental illness. But, we also conclude that the Department's allegations about mother are not undisputed. Even though the Department's motion alleged that mother "suffers from a[ ] distorted dependence on [father,]" the social worker who evaluated mother concluded in an affidavit that mother "needed to undergo a full psychological evaluation to adequately gauge whether [mother's children] could be safe in those visits" and that "[i]f and when [mother] took that evaluation and it showed no safety concerns, my assessment would change to agree to those visits occurring." Although the Department alleges that a psychological evaluation would show that mother has a mental disability or disorder, this speculation is not an undisputed fact on which a summary judgment may be based. *See S.N. II,* ¶ 17 ("A litigant may not merely assert[ ] a legal conclusion without evidence to support it.") (internal quotation marks and citation omitted); *Mt. Emmons Min. Co.,* 690 P.2d at 239.

### B. Whether Reasonable Minds Could Draw Differing Inferences

¶ 35 We also conclude that reasonable minds could draw differing inferences from the prior adjudications and termination because the findings in these prior proceedings did not relate to S.N. and we may not "assess the weight of the evidence or the credibility of ... witnesses" as to how those facts might relate to S.N. on a summary judgment motion. *S.N. II,* ¶ 15 (internal quotation marks omitted); *see In re Dependency of L.S.,* 813 P.2d at 137–38; *cf. N.D.V.,* 224 P.3d at 419; *D.L.C.,* 70 P.3d at 588. In other words, a trier of fact, such as a jury, might discount the history of adjudications and terminations altogether when deciding whether the Department proved by a preponderance of the evidence that S.N. was dependent and neglected within the meaning of section 19–3–102(1)(b)–(d).

¶ 36 We also conclude that reasonable minds could draw differing inferences from the fact of father's mental illness because even the Department's psychologist could only conclude in his psychological evaluation attached to his affidavit that "[father's] ability to parent in an appropriate manner is unknown and his ability to maintain stability and consistency in his own life and for his children seems quite unproven." Because the Department has not carried its burden of showing that there is no genuine issue of material fact, it was not entitled to judgment as a matter of law. *Gibbons,* ¶ 11.

### VI. Conclusion

¶ 37 The supreme court recognized in *S.N. II* that summary judgment is warranted only "infrequently" in dependency and neglect adjudications. *S.N. II,* ¶ 25; *see also id.* at ¶ 30 (Coats, J., dissenting). This is not such a case.

¶ 38 Consequently, we reverse the trial court's summary judgment and remand for an adjudicatory jury trial. In light of our holding, we need not address the parties' remaining contentions.

JUDGE GRAHAM and JUDGE MILLER concur.