24CA1492 Peo in Interest of AR 04-17-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1492
Mesa County District Court No. 24JV38
Honorable Valerie J. Robison, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of A.R., a Child,

and Concerning M.K. and J.R.,

Appellants.

---

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE LIPINSKY
Johnson and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 17, 2025

---

Todd M. Starr, County Attorney, Brad Junge, Assistant County Attorney, Grand Junction, Colorado, for Appellee

Josie Burt, Guardian Ad Litem

Just Law Group, LLC, John F. Poor, Denver, Colorado, for Appellant M.K.

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant J.R.

¶ 1    M.K. (mother) and J.R. (father) appeal the judgment adjudicating A.R. (the child) dependent or neglected.  We affirm.

## I.    Background

¶ 2    In May 2024, the Mesa County Department of Human Services (Department) received a report that mother had used methamphetamine that morning and that the child, who was only ten days old, was in her care.  An intake caseworker responded to mother's home, where she resided with maternal grandfather, but mother was not there.  Maternal grandfather told the intake caseworker he believed that mother might be at father's home and reported that father had a history of substance use.

¶ 3    During a telephone call with mother, the intake caseworker asked to see the child.  When mother refused, the caseworker requested an emergency custody order.  The caseworker arrived at father's residence less than two hours after the court entered the order.  Based on concerns that mother was using substances and that father had not taken action to protect the child from harm, the Department removed the child from the parents' care and assumed temporary legal custody.

¶ 4    The Department then filed a petition in dependency or neglect with respect to both parents.  The parents denied the allegations and asked for a jury trial.  The juvenile court held a three-day jury trial in July 2024.  After hearing the evidence, the jury determined that the Department had proven the allegations by a preponderance of the evidence.  Based on the jury's verdicts, the court sustained the petition, entered an adjudication, and adopted treatment plans for the parents.

## II.    Sufficiency of the Evidence

¶ 5    The parents contend that the evidence was insufficient to support the jury's verdicts.  We disagree.

### A.    Applicable Law and Standard of Review

¶ 6    As relevant here, a child is dependent or neglected if (1) the child "lacks proper parental care through the actions or omissions" of a parent; (2) the child's "environment is injurious to his or her welfare"; or (3) the child is "homeless, without proper care, or not domiciled with his or her parent . . . through no fault of [the] parent."  § 19-3-102(1)(b)-(c), (e), C.R.S. 2024.  Proper parental care means the minimum level of care or services and necessities that are required to prevent any serious threat to the child's health or

welfare. *People in Interest of S.X.M.*, 271 P.3d 1124, 1131 (Colo. App. 2011) (approving jury instruction containing this language); CJI-Civ. 41:7 (2024). An injurious environment is a situation that is "likely harmful" to the child. *People in Interest of J.G.*, 2016 CO 39, ¶ 26, 370 P.3d 1151, 1160. Unlike other provisions in section 19-3-102, a child may be adjudicated under the injurious environment provision with respect to one parent, even if the other parent created the injurious environment. *See People in Interest of M.M.*, 2017 COA 144, ¶ 25, 486 P.3d 1177, 1182.

¶ 7 An adjudication of dependency or neglect must be based on existing circumstances and related to the child's status at the time of adjudication. *People in Interest of A.E.L.*, 181 P.3d 1186, 1192 (Colo. App. 2008). But that does not mean a juvenile court must find that the child is receiving improper care at the time of the hearing. *S.X.M.*, 271 P.3d at 1130. Rather, an adjudication may be based on past, current, or prospective harm. *See People in Interest of G.E.S.*, 2016 COA 183, ¶ 15, 409 P.3d 645, 650.

¶ 8 In considering prospective harm, a court must determine whether the child will lack proper parental care or the child's environment will be injurious, if the child was returned to the

3

parent. *S.X.M.*, 271 P.3d at 1130. Said another way, a juvenile court may consider whether it is likely or expected that a child will be dependent or neglected if returned to the parent. *People in Interest of S.N.*, 2014 COA 116, ¶¶ 15-16, 338 P.3d 508, 512. Such a determination may be based on the "parent's past conduct and current circumstances." *See id.* at ¶ 17, 338 P.3d at 512.

¶ 9     "Whether a child is dependent [or] neglected presents a mixed question of fact and law because it requires application of evidentiary facts to the statutory grounds." *M.M.*, ¶ 17, 486 P.3d at 1181. To establish that a child is dependent or neglected, a department must prove the allegations in the petition by a preponderance of the evidence. *See* § 19-3-505(1), (7)(a), C.R.S. 2024; *People in Interest of S.G.L.*, 214 P.3d 580, 583 (Colo. App. 2009). When determining whether the evidence is sufficient to sustain an adjudication, we review the evidence in the light most favorable to the prevailing party and draw every inference fairly deducible from the evidence in favor of the jury's verdicts. *S.G.L.*, 214 P.3d at 583. We will not disturb the jury's verdicts if the evidence supports them, even though reasonable people might

arrive at different conclusions based on the same facts. *Id.*; *see also People in Interest of T.T.*, 128 P.3d 328, 331 (Colo. App. 2005).

## B. Analysis

¶ 10 Viewing the evidence in the light most favorable to the Department and drawing every fairly deducible inference in favor of the jury's verdicts, we conclude for three reasons that the record contains sufficient evidence to support the jury's determination that the child was dependent or neglected under subsections 19-3-102(1)(b) and (1)(c). *See S.G.L.*, 214 P.3d at 583.

¶ 11 First, the Department presented sufficient evidence to establish that, based on the parents' past substance use and treatment of other children, the child would lack proper parental care or his environment would be injurious to his welfare if the child was returned to the parents. *See People in Interest of D.L.R.*, 638 P.2d 39, 42 (Colo. 1981) ("[I]t has been held repeatedly that the trial court may properly consider the treatment accorded other children in determining whether the child before it is neglected [or] dependent."). At the adjudicatory hearing, both parents admitted that they had a history of substance abuse, and mother specifically acknowledged that she had used substances during her pregnancy

5

with the child. Mother also testified that she had used substances during an earlier pregnancy, and father said that he and mother were together at that time.

¶ 12    Second, the evidence also showed that the child would lack proper parental care or would be in an injurious environment if returned to the parents based on the parents' substance use during the case. *See S.N.*, ¶ 18, 338 P.3d at 512 (noting that the factfinder can consider a parent's "conduct such as drug use" when evaluating prospective harm). Among other things, the record shows that mother never completed any of her court-ordered urinalysis tests and, other than a hair follicle test (which was positive for substances), father never submitted any drug screens. *See People in Interest of M.H-K.*, 2018 COA 178, ¶ 69 n.5, 433 P.3d 627, 638 n.5 (noting that a jury can infer a positive result from a parent's refusal to comply with court-ordered drug testing). In addition, a caseworker testified that the parents had admitted to using substances after the case began, which the parents conceded at trial.

¶ 13    The Department's expert witnesses opined that, based on the parents' substance use, the child lacked proper parental care and

his environment would be injurious if he was returned to the parents. For example, a caseworker testified that a parent who uses substances can struggle with providing necessities for a young child, such as food, clothing, and shelter. She also said that the child could be exposed to methamphetamine, which can enter the child's system if the parents are using it in the home.

¶ 14      Third, the Department submitted sufficient evidence to prove that the child was dependent or neglected with respect to father based on mother's substance use. *See M.M.*, ¶ 25, 486 P.3d at 1182 (noting that the father admitted the children were in an injurious environment in the mother's care); *T.T.*, 128 P.3d at 331 (concluding that the child lacked proper parental care with respect to father, based on evidence that mother used substances during her pregnancy and father lived with her at that time). For example, father told the intake caseworker that he knew mother used substances, but that he did not take any action to protect the child from her. Father also testified that he knew mother used substances but did not have any concerns about her substance use. An expert witness opined that father's failure to act demonstrated that he could not protect the child from harm.

¶ 15　　We acknowledge that mother completed inpatient treatment during the case.  But mother conceded that she had relapsed after completing a previous program.  Based on this information, a caseworker opined that, despite mother's recent compliance with treatment, she had not sufficiently addressed her substance abuse issues because of her "pattern" of "being sober for an amount of time" and "then relapsing."

¶ 16　　Thus, although mother might continue to make sufficient progress to be reunited with the child, the evidence noted above, including mother's potential for relapse, established that the child would be dependent or neglected if returned to her.  We cannot reweigh the evidence to reach a different result.  *See S.G.L.*, 214 P.3d at 583; *see also Thomas v. People*, 2021 CO 84, ¶ 10, 500 P.3d 1095, 1099 (noting that an appellate court may not "invade the jury's province by second-guessing any findings that are supported by the evidence").

¶ 17　　Nor are we persuaded by the parents' assertion that the Department improperly removed the child from the home.  Although evidence related to the child's removal was relevant at the adjudication hearing, it was not dispositive of whether the child was

dependent or neglected. *See People in Interest of M.W.*, 140 P.3d 231, 233 (Colo. App. 2006) (noting that temporary protective orders "are interim orders pending a final factual determination of the allegations set forth in the petition in dependency or neglect"). Therefore, even if the Department should have acted differently at the time it removed the child from the home, the evidence was still sufficient to establish that the child was dependent or neglected.

¶ 18     We also reject the parents' argument that, because the Department allowed other children to continue to reside in the parents' homes, there was insufficient evidence that the child was dependent or neglected. Again, although this evidence may have been relevant to the jury's determination that the child was dependent or neglected, it was not dispositive. *See T.T.*, 128 P.3d at 331 (noting that the evidence was sufficient to support the jury's verdicts, even though one of the children remained in the mother's care); *see also People in Interest of J.L.M.*, 143 P.3d 1125, 1127 (Colo. App. 2006) (noting that the parent-child legal relationship is "personal between each parent and each child" and a court may consider "differences between the children").

¶ 19    Finally, we disagree with the parents' assertion that the evidence was insufficient because it did not establish that the child tested positive for substances at birth. Although the Department did not establish that the child tested positive at birth, the evidence indicated that mother (1) admitted to using substances during her pregnancy and (2) intimated to maternal grandfather that the child would be born substance exposed. In any event, nothing in section 19-3-102(1)(b) or (c) required the Department to establish that the child was born substance exposed. *Cf.* § 19-3-102(1)(g) (saying that a child is dependent or neglected when, among other things, the child "is born affected by alcohol or substance exposure"). And the Department did not base its dependency or neglect petition on prenatal substance exposure. Rather, the Department alleged that mother used substances after the child's birth. In other words, the Department did not need to prove that the child tested positive for substance at birth because it did not allege that fact in its petition. *See People in Interest of A.M.,* 786 P.2d 476, 479 (Colo. App. 1989) (noting that "[t]he purpose of an adjudicatory hearing is to determine whether the factual allegations in the dependency [or] neglect petition are supported by a preponderance of the evidence").

10

¶ 20    In sum, we conclude that the evidence was sufficient to support the jury's verdicts under section 19-3-102(1)(b) and (c). Based on this conclusion, we need not consider whether the child was also dependent or neglected under section 19-3-102(1)(e). *See People in Interest of S.M-L.*, 2016 COA 173, ¶ 29, 459 P.3d 572, 577 ("[S]ection 19-3-102 requires proof of only one condition for an adjudication."), *aff'd on other grounds sub nom. People in Interest of R.S. v. G.S.*, 2018 CO 31, 416 P.3d 905.

### III.    Disposition

¶ 21    The judgment is affirmed.

JUDGE JOHNSON and JUDGE MOULTRIE concur.